IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMY SCHMELZLE ) | |
| ) | |
| v. ) | No. 3:14-0843 |
| ) | |
| KAILEN GODDARD, et al. ) | |

**M E M O R A N D U M**

Pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure, the parties in this action have consented to have the Magistrate Judge conduct any and all proceedings in the action, including the entry of a final judgment. See Order entered July 18, 2014 (Docket Entry No. 49).

Pending before the Court is the Defendant Linda Didonato's Motion to Dismiss the Second Amended Complaint (Docket Entry No. 41), to which the Plaintiff has filed a response in opposition (Docket Entry Nos. 46-47). For the reasons set forth, the motion is denied.

**I. BACKGROUND**

The Plaintiff, Amy Schmelzle ("Schmelzle") is a resident of Kansas. Defendant Kailen Goddard ("Goddard") is a resident of Tennessee. At some point during the late 2000's, both the Plaintiff and Goddard worked remotely from their homes for MidTen Media in the internet marketing/advertising field. The Plaintiff alleges that when their employment with MidTen Media ended, the Plaintiff and Goddard entered into a partnership in late 2008 to form an internet marketing company called Lead Me Marketing Group, LLC ("Lead Me"). The Plaintiff alleges that upon the advice of Goddard and attorney David Ridings, who assisted with the formation of the company, she agreed to be a silent, but equal, partner and was not included in the Articles of Organization for the company that were filed with the Tennessee Secretary of State. The Plaintiff asserts that over the next several years, she and Goddard worked together at Lead Me, shared costs and profits equally,

made decisions about the company jointly, and created proprietary software and internet websites, including a website known as RDN2020.com. She asserts that on June 5, 2013, she raised the issue of having written papers drafted to memorialize her 50% ownership/interest in Lead Me and that Goddard assured her that he would do whatever was necessary to that effect, and that he reiterated that assurance in an email the next day. See Exhibit E to Second Amended Complaint (Docket Entry No. 38, at 53). However, written papers showing the Plaintiff's purported ownership interest were never created.

The Plaintiff alleges that, beginning in August 2012, Goddard began to engage in actions for his own self interest and to the detriment of Lead Me by creating and/or operating businesses that directly competed with and diverted business away from Lead Me. She identifies Just One Vision, Inc. ("Just One Vision"), Everyday Business Solutions, Inc. ("Everyday Business Solutions"), and Goddard Enterprises, Inc. ("GEI") as three of these businesses. The Plaintiff alleges that Goddard duplicated Lead Me's proprietary product, RDN2020.com, and registered it as LGA4040.com, created numerous internet domains that copied and were replicated from Lead Me domains, and eventually moved LGA4040.com and the duplicate domains to a hosting server, Net Standard, that he paid for by using Lead Me funds. The Plaintiff contends that all of these action were taken to divert customer orders and business from Lead Me to operations controlled by Goddard. The Plaintiff alleges that Linda Didonato ("Didonato") was the sales manager and a shareholder in Just One Vision and played an active role in diverting business away from Lead Me to Just One Vision.

The Plaintiff alleges that in late 2013 and early 2014, she inadvertently received e-mails that made her aware that BMI Elite Holdings, LLC and/or BMI Ventures, Inc. ("BMI"), one of Lead Me's largest customers, was having its business diverted from Lead Me to Just One Vision. See Exhibits F (Docket Entry No. 38, at 55) and G (Docket Entry No. 38, at 57-58). She asserts that when she confronted Goddard about the matter, he refused to discuss it with her and stated that Brandon Rosen, a BMI officer, knew about the duplicate domain sites and had ordered the redirection of BMI's customers from Lead Me to Just One Vision. The Plaintiff states that she traveled to

Tennessee in February of 2014, to personally confront Goddard about his activities and the situation with Lead Me, at which time Goddard declared to her that he was the sole owner of Lead Me, that she was merely a highly compensated employee, and that she was terminated from her employment. The Plaintiff alleges that within 30 minutes of their conversation, Goddard cancelled her access to all Lead Me sites and that she was subsequently sent a letter, dated February 24, 2014, stating that her services were no longer needed by Lead Me and that she would be given a final commission check. See Exhibit H (Docket Entry No. 38, at 60).

On March 25, 2014, the Plaintiff filed this action pursuant to diversity jurisdiction under 28 U.S.C. § 1332 against Goddard, Lead Me, Just One Vision, Everyday Business Solutions, GEI, BMI, Rosen, and Didonato. She sets out 13 specific claims:

1. a request for declaratory judgment as to her legal interest in Lead Me;

2. a claim for breach of fiduciary duty against Goddard under Tenn. Code Ann. § 48-249-407, against Goddard;

3. a claim for breach of the duty of loyalty and care against Goddard under Tenn. Code. Ann. § 61-1-104 and the common law;

4. a claim against Goddard for breach of contract;

5. a claim against Rosen and Didonato for inducement to breach of contract under Tenn. Code Ann. § 47-50-109 and the common law;

6. a claim against all Defendants for unjust enrichment;

7. a claim against all Defendants for intentional interference with a business relationship;

8. a claim against Goddard for usurpation of corporate opportunity;

9. a claim against Goddard for intentional misrepresentation.

10. a claim against Goddard for promissory fraud;

11. a claim against all Defendants for civil conspiracy;

12. a request for a declaration to pierce the corporate veil; and

13. a request for declaratory judgment that Defendants Goddard, Rosen, and Didonato were in partnership.

See Second Amended Complaint (Docket Entry No. 38), at 11-23. In addition to her requests for declaratory relief, she seeks compensatory damages, punitive damages, and statutory damages under Tenn. Code. Ann. § 47-50-109. Defendants Goddard, Just One Vision, Lead Me, EBS, GEI, BMI, and Rosen have filed answers. See Docket Entry Nos. 39 and 43. Pursuant to a case management order, the action is set for a jury trial on February 16, 2016. See Docket Entry No. 51.

In lieu of an answer, Defendant Didonato has filed the pending motion to dismiss. See Docket Entry No. 41. Didonato contends that the Plaintiff has not sufficiently pled facts supporting the proximate cause element for the inducement to breach of contract claim (Claim 5) and that the Plaintiff, by alleging that Didonato and Goddard had a partnership or agency relationship, has negated a claim for inducement to breach of contract because Tennessee law is settled that a party to a contract cannot be held liable for procuring its own breach of that contract. With respect to the Plaintiff's unjust enrichment claim (Claim 6), Didonato argues that the Plaintiff's claim is not yet ripe because the Plaintiff has not exhausted her remedies against Goddard, the principal to whom the Plaintiff alleges she had contracted to form Lead Me. Didonato contends that the Plaintiff has not sufficiently alleged that Didonato acted with improper motives or improper means as is required for the claim of intentional interference with a business relationship (Claim 7), and has likewise not alleged specific facts supporting the civil conspiracy claim (Claim 11). Didonato further argues that if the Plaintiff's claim for inducement to breach of contract fails, the civil conspiracy claim necessarily fails. Finally, Didonato contends that the Plaintiff's request for a declaration of the agency relationship between Goddard, Rosen, and herself is a "catch-all" claim without any specificity and fails to state a claim.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed under the standard that the Court must accept as true all of the allegations contained in the complaint, resolve all doubts in the Plaintiff's favor. See Kottmyer v. Maas, 436 F.3d 684 (6th Cir. 2006);

4

Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999); Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). While a complaint need not contain detailed factual allegations, the Plaintiff must provide the grounds for his entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The factual allegations supplied must be enough to show a plausible right to relief. Twombly, 550 U.S. at 555-61. More than bare assertions of legal conclusions are required to withstand a motion to dismiss and the complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id.; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436-37 (6th Cir. 1988). The Court need not accept as true legal conclusions or unwarranted factual inferences. See Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000), abrogated in part on other grounds, Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res., 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

### III. CONCLUSIONS

A. Inducement to Breach a Contract (Claim 5)

Tennessee law provides for both a common law action and a statutory action for tortious inducement to breach a contract. Edwards v. Travelers Ins. of Hartford, Conn., 563 F.2d 105, 120 (6th Cir. 1977); Polk & Sullivan, Inc. v. United Cities Gas Co., 783 S.W.2d 538, 542 (Tenn. 1989); Tenn. Code. Ann. § 47–50–109. Under both the common law and Section 47-50-109, the Plaintiff must show that: 1) there must be a legal contract; 2) the wrongdoer must have knowledge of the existence of the contract; 3) there must be an intention to induce its breach; 4) the wrongdoer must have acted maliciously; 5) there must be a breach of the contract; 6) the act complained of must have

proximately caused the breach of the contract; and 7) there must have been damages resulting from the breach of the contract. Givens v. Mullikin, 75 S.W.3d 383, 405 (Tenn. 2002); Myers v. Pickering Firm, Inc., 959 S.W.2d 152, 158 (Tenn.Ct.App. 1997).

The Defendant first argues that the Plaintiff's allegations are insufficient to satisfy the proximate cause element of this claim. The Court is not persuaded by this argument. Although it is not yet known whether there will be evidence that will ultimately support such a claim, including the issue of whether Defendant Didonato proximately caused the alleged harm to the Plaintiff, the Court finds that the Plaintiff has sufficiently pled facts to state a claim for relief.

The Defendant then argues that the position taken by the Plaintiff in this lawsuit that Didonato and Goddard had a partnership or agency relationship negates the Plaintiff's claim for inducement to breach of contract. While "a party to a contract cannot be liable for tortious interference with that contract," see Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d 785, 789 (Tenn. 2006), the Plaintiff does not contend that Didonato's agency or partnership relationship with Goddard rendered Didonato a party to the purported partnership agreement between the Plaintiff and Goddard. The purported agency or partnership relationship between Goddard and Didonato is alleged to be something entirely separate and distinct from the purported partnership arrangement between the Plaintiff and Goddard at Lead Me. Thus, the Defendant's argument is misplaced and fails to require dismissal of this claim.

B. Unjust Enrichment (Claim 6)

To state a claim for unjust enrichment under Tennessee law, the Plaintiff must demonstrate: (1) a benefit conferred upon the Defendant by the Plaintiff, (2) appreciation by the Defendant of such benefit, and (3) acceptance of such benefit without payment of the value thereof. See Chase Manhattan Bank, N.A. v. CVE, Inc., 206 F. Supp. 2d 900, 909 (M.D. Tenn. 2002); Paschall's, Inc. v. Dozier, 219 Tenn. 45, 407 S.W.2d 150, 154 (Tenn. 1966). The remedy for unjust enrichment

requires that the person who has been unjustly enriched at the expense of another make restitution to that person.  See Browder v. Hite, 602 S.W.2d 489, 491 (Tenn.Ct.App. 1980).

Didonato argues that the Plaintiff's claim against her for unjust enrichment is not yet ripe because the Plaintiff has not exhausted her remedies against Goddard, the principal to whom the Plaintiff alleges she had contracted to form Lead Me.  The Court is not persuaded by this argument.  While Tennessee law provides that a Plaintiff who is afforded recovery from the person with whom she has a contract cannot also recover under a theory of unjust enrichment from third persons incidentally benefitted by her performance, Paschall's, 407 S.W.2d at 154, the Plaintiff may plead alternative theories of recovery.  See Rule 8(d)(3) of the Federal Rules of Civil Procedure; Town of Smyrna, Tenn. v. Municipal Gas Auth. of Ga., 2012 WL 1313340, *13 (M.D. Tenn. Apr. 17, 2012) (Sharp, J.).  Furthermore, in the instant action, the Plaintiff has named both Goddard and Didonato as Defendants.  While the Plaintiff may ultimately be barred from obtaining a remedy under the theory of unjust enrichment because she obtains a contractual recovery against Goddard, this is a limitation on recovery and does not prevent the Plaintiff from pursuing both her claims against Goddard and a quasi-contractual claim against the other Defendants in the same action.  Pureworks, Inc. v. Brady Corp., 2010 WL 3724229, *13 (M.D. Tenn. Sept. 15, 2010) (Haynes, J.).

C. Intentional Interference with Business Relationship (Claim 7)

This claim requires the Plaintiff to show:  (1) an existing business relationship between the Plaintiff and specific third parties or a prospective relationship with an identifiable class of third persons; (2) the Defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the Defendant's intent to cause the breach or termination of the business relationship; (4) the Defendant's improper motive or improper means and (5) damages resulting from the tortious interference.  Trau–Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002).

Defendant Didonato contends that the Plaintiff has not sufficiently alleged that Didonato acted with improper motives or improper means as required for the claim. In Trau-Med, the court indicated that "improper motive" required a showing "that the defendant's predominant purpose was to injure the plaintiff" and that "improper means" would include "those means that are illegal or independently tortious" and "those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct." 71 S.W.3d at 701 n.5. However, the court also recognized that the determination of whether an "improper" motive or action on the part of the defendant existed was dependent on the facts and circumstances of a given case. Id.

While the Court agrees that there are insufficient allegations in the Second Amended Complaint to support a showing that Didonato acted with a predominant purpose to injure the Plaintiff, i.e., that she acted with an improper motive, the Plaintiff nonetheless alleges that Didonato was knowingly engaged in a plan with Goddard to purposefully sever the business relationships between Lead Me customers and Lead Me and to move those customers to Just One Vision in a covert or clandestine manner unbeknownst to the Plaintiff and to her detriment. This plan is also alleged to have involved replicating domain sites and the replication of the proprietary web-based platform. At this point of the proceedings and upon a Rule 12(b)(6) motion, the Plaintiff's allegations are sufficient to satisfy the "improper means" requirement of the claim. See Trau-Med, 71 S.W.3d at 701 n.5 (examples of improper means include misrepresentation or deceit, misuse of inside or confidential information, or methods that involve established standards of a trade or profession or involve unethical conduct). Accordingly, the Defendant's motion will be denied as to this claim.

D. Civil Conspiracy (Claim 11)

In Tennessee, a civil conspiracy is defined as a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means," which results in damage to the plaintiff. Chenault v. Walker, 36 S.W.3d 45, 52

8

(Tenn. 2001); Birmingham-Jefferson Cnty. Transit Auth. v. Boatright, 2009 WL 2601926, *5 (M.D. Tenn. Aug. 20, 2009) (Campbell, J.). Participating in a civil conspiracy is not an independent tort. Stanfill v. Hardney, 2007 WL 2827498, *7 (Tenn.Ct.App. Sept. 27, 2007). It is a derivative claim that requires the existence of an underlying tort or wrongful act committed by one or more of the conspirators in furtherance of the conspiracy. Id. If the underlying wrongful conduct is found to be not actionable, the conspiracy claim must also fail. Greene v. Brown & Williamson Tobacco Corp., 72 F.Supp.2d 882, 887 (W.D. Tenn.1999).

Under Tennessee law, the elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. Menuskin v. Williams, 145 F.3d 755, 770 (6th Cir. 1998); Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 38 (Tenn.Ct.App. 2006). Civil conspiracy claims must be pled with some degree of specificity. Kincaid, 221 S.W.3d at 38.

Defendant Didonato argues that if the Plaintiff's claim for inducement to breach of contract is dismissed, the civil conspiracy claim must necessarily be dismissed because there will not be a claim of an underlying predicate tort committed pursuant to the conspiracy. This argument lacks merit because the Court has found that the claim for inducement to breach of contract is not subject to dismissal for failure to state a claim.

Defendant Didonato also argues that the Plaintiff has not pled the conspiracy claim with sufficient particularity. After review of the Second Amended Complaint, the Court disagrees. Contrary to the Defendant's contention, the Plaintiff has made specific factual allegations against Didonato, see Docket Entry No. 38, ¶¶ 21, 27, and 35, and has pled her involvement in the alleged conspiracy and underlying torts. Id. at ¶¶ 67-69, 77-78, and 97-98. The Court concludes that there are "enough facts to state a claim to relief that is plausible on its face" for a civil conspiracy and that the Plaintiff has pled a claim that is plausible. Twombly, 550 U.S. at 570.

E. Request for a Declaration that the Defendants were in a Partnership (Claim 13)

Defendant Didonato argues that the Plaintiff's request for a declaration as to the relationship between Goddard, Rosen, and Didonato is a "catch-all" claim without any specificity. Without suggesting whether or not the Plaintiff's request for declaratory relief has merit, the Court finds that the Defendant has not set forth an actual basis for dismissal of this request for declaratory relief.

**CONCLUSION**

Based on the foregoing, Defendant Linda Didonato's Motion to Dismiss the Second Amended Complaint (Docket Entry No. 41) is denied.

An appropriate Order will enter.

JULIET GRIFFIN
United States Magistrate Judge